**RUTH ELKHORN COALS, Inc., et al.,
Appellants,**

v.

**James P. MITCHELL, Secretary of
Labor, Appellee.**

**No. 13569.**

United States Court of Appeals
District of Columbia Circuit.

Argued May 7, 1957.

Decided Sept. 19, 1957.

Petition for Rehearing Denied
Oct. 10, 1957.

---

Mr. James M. Landis, Washington, D. C., with whom Mr. Wallace M. Cohen and Miss Selma M. Levine, Washington, D. C., were on the brief, for appellants.

Mr. Arthur H. Fribourg, Atty., Dept. of Justice, and Mr. William A. Lowe, Atty., Dept. of Labor, with whom Asst. Atty. Gen. George C. Doub and Mr. Paul A. Sweeney, Atty., Dept. of Justice, were on the brief, for appellee. Mr. Edward H. Hickey, Atty., Dept. of Justice, at the time the record was filed, also entered an appearance for appellee.

Before PRETTYMAN, FAHY and DAN-AHER, Circuit Judges.

FAHY, Circuit Judge.

Appellants constitute part of the bituminous coal industry. They filed suit in the District Court against the Secretary of Labor, appellee, seeking invalidation of a determination by the Secretary, made under the Walsh-Healey Public Contracts Act,[1] of prevailing minimum wages in the industry. The effect of the determination considered with the Act is

1. 49 Stat. 2036 (1936), as amended 41 U.S.C. § 35 (1952), 41 U.S.C.A. § 35.

to require appellants, in any contract they might make with the Government to supply coal in an amount exceeding $10,000, to stipulate to pay not less than the determined minimum wages to persons appellants employ in furnishing the coal. The District Court granted the Secretary's motion for summary judgment and affirmed his determination of the prevailing minimum wages.[2]

█ The principal contention of appellants is that the Walsh-Healey Act does not apply at all to the bituminous coal industry. They rely upon the provision of the Act that it "shall not apply to purchases of such materials, supplies, articles, or equipment as may usually be bought in the open market  *  *  *," 41 U.S.C. § 43 (1952), 41 U.S.C.A. § 43 an exclusion which appellants urge includes bituminous coal. They raised this point in the administrative proceedings, where the Secretary ruled that it was premature. They renewed the contention before the District Court and press it here, asserting that they may obtain our review of the question under the Fulbright Amendment. Section 10(b) of the Act, 41 U.S.C. § 43a(b) (1952), 41 U.S.C.A. § 43a(b), a part of that Amendment, provides:

> "Review of any such wage determination, or of the applicability of any such wage determination, may be had  *  *  *  in the manner provided in section 1009 of Title 5 by any person adversely affected or aggrieved thereby, who shall be deemed to include any manufacturer of, or regular dealer in, materials, supplies, articles or equipment purchased or to be purchased by the Government from any source, who is in any industry to which such wage determination is applicable."

Notwithstanding this language, the Secretary urges that the question about the open market exemption is not reviewable in these proceedings. He says that the open market provision is concerned with the applicability of the wage determination, which according to its terms applies only to contracts subject to the provisions of the Act, from which it follows that any question as to the scope of the exemption can be raised only by way of defense in a contract enforcement action as permitted by section 10(c), 41 U.S.C. § 43a(c) (1952), 41 U.S.C.A. § 43a(c). Under section 10(c) the applicability of the exemption to a particular contract may be judicially reviewed, notwithstanding the contract contains the stipulation required by the Act for payment of the minimum wages. Mitchell v. Covington Mills, Inc., supra, is cited as holding that only in this manner may the applicability of the exemption be judicially considered. But we think the case does not so hold, for we there pointed out that "the complaints in these suits do not ask the court to determine"[3] whether the open market provision takes the bituminous coal industry as such entirely out of the operations of the Act, the very question now presented.

██ In our view the question thus stated may be judicially reviewed in these proceedings under section 10(b). Appellants are regular dealers in supplies of the bituminous coal industry. The wage determination is purportedly applicable to that industry. The "applicability of  *  *  *  such wage determination," as well as the wage determination itself, is sought to be reviewed. Supplies of bituminous coal are among those purchased or to be purchased by the United States. Appellants thus by the very terms of section 10(b) are persons adversely affected or aggrieved, and as such are given by that section the right to obtain judicial review of the wage determination and its applicability, even though they have not entered into a contract with the Government to supply

---

2. The purposes and plan of the Walsh-Healey Act have recently been described by this court in Mitchell v. Covington Mills, Inc., 97 U.S.App.D.C. 165, 229 F.2d 506, and need not now be repeated in more detail than is contained in the foregoing paragraph of the opinion.

3. 97 U.S.App.D.C. at page 168, 229 F.2d at page 509.

bituminous coal. While judicial review of these questions is also available in an appropriate case under section 10(c), Mitchell v. Covington Mills, Inc., supra, n. 4, this does not preempt the right of review available under section 10(b). The plain language of the latter applies to appellants in the circumstances before the Court, the language is consistent with the purpose and intent of the Amendment of which the language is a part, and it should be given its plain meaning.

On the merits, however, we think the appeal must fail. We are unable to agree that the open market provision exempts bituminous coal from the Act,[4] or that error otherwise impairs the validity of the Secretary's determination or the District Court's judgment.

As to the open market exemption: Appellants contend it exempts this industry because bituminous coal is mined for general use and may be bought by the Government in normal competitive channels. Under this theory the Act would apply only to such things as were required by the Government to be made to order on its specifications. The Secretary, on the other hand, interprets the exemption to exclude from the coverage of the Act only purchases the Government itself is authorized to make in the open market.

The language of the exemption, considered alone, can arguably be construed to mean that if bituminous coal can be bought generally in the open market then the industry as such is exempt from the Act; but this language must be interpreted in the context of the whole statute, and with its purpose in mind. The Secretary calls attention to several passages in the statute which support his narrow interpretation of the exemption. For example, section 9 of the Act, 41 U.S.C. § 43 (1952), 41 U.S.C.A. § 43,

explicitly exempts "perishables, including dairy, and livestock and nursery products." These are available for purchase in the open market. They need not have been singled out for exemption if open market availability was enough to exempt them. Explicitly exempted also are "agricultural [and] farm products processed for first sale by the original producers." The statute covers such products when subsequently processed, though they are available in the open market. Another instance is the explicit exemption of "any contracts made by the Secretary of Agriculture for the purchase of agricultural commodities or the products thereof." This would be superfluous were the statute inapplicable to products generally available in the open market. These explicit exclusions indicate that Congress did not intend the open market exemption itself to exclude supplies simply because they were available generally in the open market. The same indication inheres in the requirement of section 1(a), 41 U.S.C. § 35(a) (1952), 41 U.S.C.A. § 35(a), that a contractor with the Government must be either the manufacturer of or a "regular dealer" in the supplies purchased; for a "regular dealer" is one who deals in goods which ordinarily are saleable in the open market.

With the foregoing we must also consider the basic purpose of the Act. As set forth in Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 507, 63 S.Ct. 339, 342, 87 L.Ed. 424, and as repeated in our recent Covington Mills decision, this basic purpose is "to use the leverage of the Government's immense purchasing power to raise labor standards," and to do this on a scale which could hardly be possible under the narrow scope which would be accorded to the Act under appellants' broad interpretation of the exemption. Important also is the fact that

---

4. Although in the administrative proceeding this question was not considered because deemed premature it need not now be remanded to the Secretary. The question is one of statutory interpretation. We reach our result independently of the factual allegations made by appellants. We do not understand appellants to contend now that an administrative hearing upon the applicability of the exemption is required as a condition to our disposition of the question.

since 1936 the exemption has been consistently interpreted and applied by the Secretary, as administrator of its provisions, to include only supplies purchased by the United States where the contracting officer is authorized by express language in a statute to purchase in the open market, or where the purchase is made without advertising for bids under circumstances bringing it within the exceptions to the General Purchase Statute, Rev.Stat. § 3709, as amended, 41 U.S.C. § 5 (1952), 41 U.S.C.A. § 5, for example, when immediate delivery is required by public exigency.

When Congress was considering the first appropriation of funds for administering the Act inquiry was made of the Comptroller General whether the administrative interpretation or one which would give broad scope to the open market exemption as now claimed by appellants should be accepted. H.R.Rep. No. 433, 75th Cong., 1st Sess. 25. The Acting Comptroller General responded:

> To permit such exemptions under the present act, which relates only to supply contracts, would so restrict its operation as practically to nullify its other provisions. Consequently, as between that interpretation and the one adopted by the Secretary of Labor, I felt compelled to accept the latter—the plain terms of the provision being such as to admit of only one or the other of those two interpretations.

Accordingly I have to advise that unless and until the matter be clarified by further legislation, I am constrained to concur in the interpretation placed on the provision by the Department of Labor.[5]

81 Cong.Rec. 2771. The Secretary's interpretation, brought thus forcibly to congressional attention, has persisted throughout the administration of the Act and has been the basis upon which appropriations have been made.

■ Considering the foregoing, and notwithstanding a deal of ambiguity in congressional discussions, we are impelled to resolve doubts against the interpretation sought by appellants. United States v. Korpan, 354 U.S. 271, 77 S.Ct. 1099, 1 L.Ed.2d 1337; Baltimore & O. R. Co. v. Jackson, 353 U.S. 325, 77 S.Ct. 842, 1 L.Ed.2d 862. See also Brooks v. Dewar, 313 U.S. 354, 61 S.Ct. 979, 85 L.Ed. 1399. Otherwise there would be more to repudiate than to accept in the mass of historical, legislative, and administrative material bearing on the problem. We do not overlook competing considerations, including the relationship of the open market language to similar language in the earlier Eight-Hour Law, 37 Stat. 138 (1912), 40 U.S.C. § 325 (1952), 40 U.S. C.A. § 325, which caused the latter to be given a narrower interpretation than we accord the present Act. But in all the circumstances of language, purpose and history the authority of the Secretary to make a determination of the prevailing

---

5. The appropriations bill as reported by the House Appropriations Committee provided $265,000 for the Division of Public Contracts, which would administer the Walsh-Healey Act. This was considerably less than the amount requested. Chairman McMillan of the Committee reported that the lower figure was "a result of the doubt that the committee entertained as to the question of the purchase of goods in the open market." After the receipt of the Acting Comptroller General's opinion quoted above, Chairman McMillan moved to amend the appropriations bill to provide a higher figure for the administration of the Act. He stated that he did this be-

cause "the effect of * * * [the Comptroller General's] decision is to considerably expand the activities of this division over what would have been required had the interpretation favored by our subcommittee been placed on the law. In the light of these facts, I am moving to restore the amount that the committee cut from the estimates for the Division of Public Contracts." 81 Cong.Rec. 2770. The narrow interpretation of the open market exemption was approved by Congressman Healey, sponsor of the Act. 81 Cong.Rec. 2771–72. The Amendment was adopted by the House of Representatives, 81 Cong.Rec. 2773, and became law, 50 Stat. 299 (1937).

minimum wages for the bituminous coal industry must be upheld.

The foregoing disposes of the principal contentions of appellants. We have considered, however, their other contentions, concerned with the sufficiency and competence of the evidence, the selection of production districts, and the correctness of different wages for districts covered by the determination, including the alleged inclusion therein of factors for which employers cannot be held liable because of the Portal-to-Portal Act, 61 Stat. 84 (1947), 29 U.S.C. § 251 (1952), 29 U.S.C.A. § 251. We find among these contentions no basis for reversing the summary judgment granted by Judge Letts in favor of the Secretary.

Affirmed.