**BALDOR ELECTRIC COMPANY et al.,**
**Plaintiffs,**

v.

**W. Willard WIRTZ, Secretary of Labor,**
**Defendant.**

**Civ. A. No. 3673-62.**

United States District Court
District of Columbia.

Feb. 28, 1964.

Donovan, Leisure, Newton & Irvine, John W. Martin, Jr., Washington, D. C., for plaintiffs.

David C. Acheson, U. S. Atty., Charles T. Duncan, Joseph M. Hannon, Arnold T. Aikens, Asst. U. S. Attys., Sylvia S. Ellison, James B. Leist, U. S. Dept. of Labor, Washington, D. C., for defendant.

MATTHEWS, District Judge.

This is an action for review of an administrative determination by the Secretary of Labor under the Walsh-Healey Public Contracts Act (49 Stat. 2036–2039, 41 U.S.C. §§ 35–45) of prevailing minimum wages in the motors and generators industry (27 F.R. 10163). The case previously was before the Court on plaintiffs' motion for preliminary injunction, defendant's motion to dismiss and in the alternative for summary judgment, and plaintiffs' cross-motion for summary judgment. These motions were decided by an Order entered on April 5, 1963 which granted summary judgment in favor of plaintiffs and set aside defendant's minimum wage determination for the motors and generators industry.

Defendant appealed to the Court of Appeals for this Circuit, and the Appellate Court stayed this Court's order pending final disposition of the appeal.

The Court of Appeals has rendered a decision on the merits, but has remanded to this Court with directions "to resolve any remaining factual issues with respect to the standing to sue of the various plaintiffs-appellees" in accordance with the test for standing enunciated in Part II of their opinion; "to supplement the record by incorporating therein its [this Court's] findings and conclusions on the subject of standing"; and, if one or more of the plaintiffs is found to have standing to sue, to "enjoin the effectiveness of the Secretary's determination with respect to the entire industry" (W. Willard Wirtz, Appellant v. Baldor Electric Company, et al., Appellees, opinion and Order of December 31, 1963 in No. 17,770 at page 32).

Pursuant to the remand on the question of the standing to sue of the plain-tiffs, an informal conference with counsel for the parties was held at the Court's request on January 17, 1964 to ascertain the parties' views with respect to appropriate disposition of this matter. Defendant's counsel stated at the January 17, 1964 conference that the Department of Labor had been unable to formulate its position at that time, and the conference thereupon was terminated with directions to the parties to file such papers as they deemed appropriate.

Plaintiffs filed a motion on January 20, 1964 for entry of proposed findings and conclusions and a proposed order with respect to the standing to sue of the plaintiffs-appellees, which motion was set for hearing on January 31, 1964. On that day defendant served and filed a memorandum in opposition thereto. At the hearing on January 31, 1964 plaintiffs were directed to submit new proposed findings and conclusions and order with respect to standing to sue which plaintiffs did on Feb. 6, 1964. Thereafter on February 11 and 13, 1964, defendant filed additional opposition to said proposed findings, conclusions and order.

This Court now makes the following:

## FINDINGS OF FACT

1. All eleven of the plaintiffs-appellees are manufacturers of electric motors and generators and are engaged in the industry to which defendant's minimum wage determination applies (Complaint, par. 3, Joint Appendix, page 4; Supplemental Statement of Material Facts, par. 10, Joint Appendix, page 59).

2. Agencies of the United States annually purchase motors and generators in total dollar amounts exceeding ninety million dollars ($90,000,000) under contracts subject to the requirements of the Walsh-Healey Public Contracts Act (Complaint, par. 8, Joint Appendix, page 6). All eleven of the plaintiffs-appellees intend and expect to submit bids for sale of motors and generators to agencies of the United States, and all desire to be eligible to submit bids for contracts subject to the requirements of the Walsh-

Healey Public Contracts Act (Complaint, par. 16, Joint Appendix, page 9).

3. Defendant's minimum wage determination requires manufacturers, including plaintiffs-appellees, who enter into contracts subject to the requirements of the Walsh-Healey Public Contracts Act for motors and generators to pay not less than $1.48 per hour to all persons engaged in the manufacture or furnishing of fractional horsepower motors and generators and not less than $1.73 per hour to all persons engaged in the manufacture or furnishing of non-fractional horsepower motors and generators (Minimum Wage Determination for the Motors and Generators Industry, 41 C.F.R. § 50–202.29, Joint Appendix, pages 15–16; Complaint, par. 7, Joint Appendix, page 5).

4. Plaintiffs-appellees Bodine Electric Company, Lamb Electric Company, a Division of Ametek, Inc. and Peerless Electric Division of H. K. Porter Company, Inc. pay minimum wages equal to or greater than those prescribed by the Secretary of Labor in his determination for this industry (Complaint, par. 20, Joint Appendix, page 10). The only allegation of injury to these companies is the contention that the general level of wages in the industry will rise as a result of the Secretary's minimum wage determination, and that they will be forced to compete for labor in a higher cost market (Complaint, par. 20, Joint Appendix, pages 10–11).

5. Plaintiffs-appellees Century Electric Company, The Imperial Electric Company and the Marathon Electric Manufacturing Corporation allege in the complaint that they pay minimum wages less than those found by the Secretary to be the prevailing minimums and that they would be required to increase the minimum wages they pay in order to comply with the Secretary's determination (Complaint, pars. 17, 19, Joint Appendix, pages 9–10). These three plaintiffs-appellees have not, however, submitted any affidavits or other facts in support of their allegations, despite the defendant's jurisdictional challenge in his motion to dismiss and in the alternative for summary judgment filed February 1, 1963.

6. Plaintiff-appellee Baldor Electric Company has established that: it manufactures and sells both fractional and non-fractional horsepower motors and generators; its employees are subject to the Secretary's minimum wages for both branches of the industry since the same employees produce both fractional and non-fractional horsepower items; at one of its manufacturing plants the *average wage* paid to production employees is less than the non-fractional minimum of $1.73 per hour, and a large number of these employees are paid less than the fractional minimum of $1.48 per hour; and at its other plant some employees are paid less than the non-fractional minimum wage determined by defendant (Ballman Affidavit, par. 3, Joint Appendix, pages 30–32). In recent years Baldor has sought to obtain government contracts for motors and generators (Ballman Affidavit, par. 6, Joint Appendix, page 31). However, if the company were required to comply with the Secretary's minimum wage determination, Baldor would have to increase wages paid to a majority of employees at its Fort Smith, Arkansas plant and to some of the employees at its St. Louis plant, which would result in a serious threat to the company's economic survival (Ballman Affidavit, par. 4, Joint Appendix, page 31).

7. Plaintiff-appellee Holtzer-Cabot Corporation manufactures and sells fractional and non-fractional horsepower motors and generators (Frost Affidavit, par. 2, Joint Appendix, page 37). The same employees at Holtzer-Cabot's only plant are engaged in producing both fractional and non-fractional horsepower items and are subject to the Secretary's minimum wage determinations for both branches of the industry; the company employs blueprint machine operators and nameplate typists who are paid less than the Secretary's minimum wage determination for the fractional horsepower branch and a number of direct production em-

ployees who are paid less than the minimum wage for the non-fractional branch of the industry (Frost Affidavit, par. 3, Joint Appendix, page 37). If Holtzer-Cabot were required to comply with the minimum wage rates specified by defendant, it would have to pay increased wages of as much as twenty-three (23) cents per hour to meet the Secretary's minimum for the fractional horsepower branch and fifty (50) cents per hour to meet the Secretary's minimum for the non-fractional horsepower branch; these increases probably would result in an upward revision of rates for most other employees, since increases in minimum wage rates affect the entire wage structure of this company (Frost Affidavit, par. 5, Joint Appendix, page 38). Compliance with the minimum determined by the Secretary for the non-fractional branch of the industry would nullify the wage rates specified for four of the labor grades for production employees contained in the company's labor contract (Frost Affidavit, par. 4, Joint Appendix, pages 37–38). In the past Holtzer-Cabot has sold motors and generators to agencies of the United States under contracts subject to the Walsh-Healey Act (Frost Affidavit, par. 7, Joint Appendix, pages 38–39). Loss of sales for federal agencies would have grave and immediate economic consequences for this company (Frost Affidavit, par. 8, Joint Appendix, page 39).

8. Plaintiff-appellee Westinghouse Electric Corporation manufactures fractional and non-fractional horsepower motors and generators at seven locations in the United States; at each location it has starting rates for employees to whom defendant's minimum wage determination applies that are below the applicable minimum specified in the Secretary's determination; increases in these starting rates for newly-hired employees would disturb pay differentials established as a result of collective bargaining with labor organizations and would create labor unrest (Blasier Affidavit, par. 3, Joint Appendix, page 35). Additionally, Westinghouse pays eighty-three (83) employees at one of its plants less than the applicable minimum wage required by defendant's determination (Blasier Affidavit, par. 4, Joint Appendix, pages 35–36). Increases in starting rates and increases in pay to persons presently employed by Westinghouse could affect the entire salary structure and result in increased wages for other employees (Blasier Affidavit, par. 5, Joint Appendix, page 36). In recent years Westinghouse has manufactured products of this industry at four of its plants for sale to agencies of the United States under contracts subject to the Walsh-Healey Act; among its plants that have supplied motors and generators to federal agencies is the installation with eighty-three (83) employees who receive less than the Secretary's minimum; loss of sales of motors and generators to agencies of the United States would have immediate economic consequences for the company (Blasier Affidavit, par. 6, Joint Appendix, page 36).

9. Plaintiff-appellee The Louis Allis Co. manufactures non-fractional horsepower motors and generators (Skidmore Affidavit, par. 2, Joint Appendix, page 42). At its only factory, it pays seven (7) employees less than the minimum determined by defendant for the non-fractional branch of the industry. Were Louis Allis required to comply with the Secretary's determination, it would have to increase wages for one employee by twenty-three (23) cents per hour and for two other employees by fourteen (14) cents per hour (Skidmore Affidavit, par. 3, Joint Appendix, page 42). Additionally, the company has starting wage rates for positions that would be affected by the Secretary's determination which are twenty-three (23) cents per hour below the minimum wage specified for the non-fractional branch of the industry (Skidmore Affidavit, par. 4, Joint Appendix, pages 42–43). If Louis Allis were required to raise its wages paid and its starting rates by as much as twenty-three (23) cents per hour, it is probable that it also would be required to increase wages of other employees who are paid

more than the prescribed minimum (Skidmore Affidavit, par. 5, Joint Appendix, page 43). In the past few years, as much as ten per cent (10%) of the company's total sales has been to agencies of the United States, and many of these sales were under contracts subject to the Walsh-Healey Act; Louis Allis was actively engaged in the manufacture of motors and generators for the federal government when this action was initiated (Skidmore Affidavit, paragraphs 7–8, Joint Appendix, pages 43–44). Loss of sales to agencies of the United States would have grave and immediate economic consequences for Louis Allis. (Skidmore Affidavit, par. 8, Joint Appendix, page 44.)

10. Plaintiff-appellee Northwestern Electric Company has established that it manufactures fractional and non-fractional horsepower motors and generators at a single location (Martin Affidavit, paragraphs 2–3, Joint Appendix, page 40). One of Northwestern's sixty production workers is paid less than the applicable rate determined by the Secretary to be the prevailing minimum wage (Martin Affidavit, par. 3, Joint Appendix, page 40). Additionally, the company's starting wage rates for new workers in a variety of production jobs are from fifteen (15) to twenty-one (21) cents per hour below the minimum prescribed by defendant (Martin Affidavit, par. 4, Joint Appendix, page 40). Increases of up to twenty-one (21) cents an hour in starting wage rates probably would require additional increases in wages paid to other persons above the minimum specified for the non-fractional horsepower branch of the industry (Martin Affidavit, par. 5, Joint Appendix, page 40). In the past two years, approximately thirty per cent (30%) of Northwestern's total sales has been to agencies of the United States, and these sales primarily have been of non-fractional horse-

power items under contracts subject to the Walsh-Healey Act; Northwestern bids in response to invitations by the federal government on an average of twice a month, and loss of sales to federal agencies would have grave and immediate economic consequences to the company (Martin Affidavit, paragraphs 7–8, Joint Appendix, page 41).

## CONCLUSIONS OF LAW

1. Standing to challenge the lawfulness of a minimum wage determination under the Walsh-Healey Public Contracts Act is not vested in every manufacturer of products covered by the wage determination. Section 10(b) of the Walsh-Healey Act, 41 U.S.C. § 43a(b), requires a showing that one is "adversely affected or aggrieved" by the wage determination in order to obtain court review. W. Willard Wirtz v. Baldor Electric Co. et al., No. 17,770, D.C.Cir., opinion of Dec. 31, 1963 at page 24.

2. The issue of standing must be resolved in the light of the particular facts and circumstances pertaining to those seeking to challenge the minimum wage determination and of the intendment of Section 10(b) of the Walsh-Healey Act, 41 U.S.C. § 43a(b), to bestow litigable rights upon those adversely affected or aggrieved by arbitrary action of the Secretary of Labor. 98 Cong.Rec. pp. 6246, 6530, 6531. W. Willard Wirtz v. Baldor Electric Co. et al., supra, at page 27.

3. Plaintiffs-appellees Bodine Electric Company, Lamb Electric Company, a Division of Ametek, Inc. and Peerless Electric Division of H. K. Porter Company, Inc. are not adversely affected or aggrieved by the contested determination and have no standing to sue.[1]

4. Plaintiffs-appellees Century Electric Company, The Imperial Electric Company and the Marathon Electric

---

[1]. These companies pay all affected employees wages equal to or greater than those prescribed by the Secretary of Labor, and the immediate impact of the Secretary's determination apparently would benefit their competitive positions by raising the costs of their competitors. W. Willard Wirtz v. Baldor Electric Co. et al, supra, at page 28.

Manufacturing Corporation have failed to establish that they are adversely affected or aggrieved. Therefore, they have no standing to sue.

■ 5. This court concludes from paragraphs 6, 7, 8, 9 and 10 of the Findings of Fact herein that plaintiffs-appellees Baldor Electric Company, Holtzer-Cabot Corporation, Westinghouse Electric Corporation, The Louis Allis Company and the Northwestern Electric Company are adversely affected within the meaning of Section 10(b) of the Walsh-Healey Contracts Act, 41 U.S.C. § 43a(b), and have standing to sue. Specifically, the court concludes that said plaintiffs-appellees are manufacturers of electric motors and generators and are engaged in the industry to which the challenged wage determination of defendant applies; that electric motors and generators are purchased or are to be purchased by the United States government; that the said plaintiff-appellees pay wages to "covered employees" which are less than the minimum wages specified in the wage determination of defendant; that the effect of the wage determination considered with the Walsh-Healey Act is to require plaintiffs-appellees, in any contract they might make with the Government to manufacture electric motors and generators in an amount exceeding $10,000, to stipulate to pay not less than the determined minimum wages to persons plaintiffs-appellees employ in manufacturing these articles,[2] and hence that the said plaintiffs-appellees are adversely affected, and have standing to contest the validity of defendant's wage determination. Ruth Elkhorn Coals v. Mitchell, 101 U.S.App. D.C. 313, 248 F.2d 635, cert. denied, 355 U.S. 953, 78 S.Ct. 539, 2 L.Ed.2d 530.

## ORDER

Findings of Fact and Conclusions of Law as to plaintiffs' standing to sue having been entered herein pursuant to the remand of this case to this court by the United States Court of Appeals (W. Willard Wirtz, Appellant v. Baldor Electric Co. et al., Appellees, No. 17,770, Dec. 31, 1963), and this court having found that plaintiffs Baldor Electric Company, Holtzer-Cabot Corporation, Westinghouse Electric Corporation, The Louis Allis Company and Northwestern Electric Company have standing to sue and that the remaining plaintiffs do not have such standing, it is by the court this 28th day of February 1964:

Ordered

1. The actions initiated by plaintiffs Baldor Electric Company, Holtzer-Cabot Corporation, Westinghouse Electric Corporation, The Louis Allis Company and Northwestern Electric Company are to stand but the actions initiated by the remaining plaintiffs are dismissed.

2. Defendant's determination of prevailing minimum wages in the motors and generators industry, as published on October 17, 1962 at page 10163 of the Federal Register (27 F.R. 10163), is null and void and of no legal effect.

3. Defendant, his successors in office, and his and their agents and representatives, are hereby enjoined from enforcing or attempting to enforce said determination in any manner and with respect to any member of the motors and generators industry.

4. Defendant, within thirty (30) days following a final disposition of the appeal by the United States Court of Appeals, shall cause to be published in the Federal Register of the United States a copy of this Order (but not of the Findings of Fact or Conclusions of Law in connection therewith).

5. Pursuant to Order by the Court of Appeals, this Order is stayed pending final disposition of the appeal by that court.

2. 41 S.C.A. § 35(b).